PEOPLE *ex rel.* CORWIN V. WALTER.

*Railroad aid bonds — presumption against authority to issue — condition pre-
cedent to issue—Certiorari — limitation of time to issue writ — issue of town
bonds before writ granted.*

Upon a certiorari to review proceedings for the purpose of bonding a town in
aid of a railroad under Laws 1868, chap. 811; 1869, chap. 241; 1871, chap.
127, *held*, that it was incumbent upon the officers issuing the bonds to show
that the lawful authority existed for bonding the town in aid of the railroad
at the time of the institution of the proceedings.

The act of 1869 (chap. 241) confines the right to bond towns in aid of a railroad
to towns in a certain district along the route of such road.    *Held*, that the
location of the route was a condition precedent to the institution of proceed-
ings under the act to bond a town.

There is no statute which prescribes the time within which a common-law
certiorari must issue after the occurrence of the proceedings sought to be
reviewed.    It is in the discretion of the court, but two years has been the
time usually adopted in the absence of special circumstances.

Upon a certiorari to review proceedings to issue railroad aid bonds, *held*, that
the fact that the bonds had been issued by the town officers to bond to the
railroad company, such bonds not having passed into the hands of *bona fide*
holders, did not render the application for the writ too late.

CERTIORARI to review the proceedings had and taken in the
matter of bonding the town of Newfane, in the county of Niagara,
in aid of the Lake Ontario Shore Railroad Company, under Laws
1868, chap. 811, as amended by Laws 1869, chap. 241, and Laws
1871, chap. 127.

The writ, which is a common-law certiorari, was issued upon the application of William V. Corwin and others against Peter D. Walter, county clerk of Niagara county. Ancillary writs were afterward issued to the commissioners for bonding said town and to the assessors of the same town. Three other writs were issued to review the proceedings had in bonding other towns of the same county in aid of the same railroad. The other cases were entitled as follows: People *ex rel.* William P. Mentz and others against Walter, county clerk, and the commissioners and assessors of the town of Lewiston; People *ex rel.* Ralph Stockwell and others against Walter, county clerk, and the commissioners and assessors of the town of Wilson; and People *ex rel.* Elmon Hess and others against Walter, county clerk, and the commissioners and assessors of the town of Somerset. All the facts necessary and important to an understanding of the points passed upon appear sufficiently in the opinion.

*William S. Farnell,* for relators.

*Rhodes & Parkhurst* and *A. Perry,* for respondents.

TALCOTT, J. While the defects alleged in the proceedings in the attempt to bond the several towns specified in the foregoing titles differ in many particulars, yet one fatal defect is common to all the cases, namely, a total want of jurisdiction and power on the part of the county judge of Niagara county to appoint the bonding commissioners for either of the towns in question. Following the decision of the court of last resort in the case of the *People ex rel. Aikin* v. *Morgan,* 55 N. Y. 587, we must hold that it is incumbent upon the respondents to show that the lawful authority existed for bonding the town in aid of the railroad at the time of the institution of the proceedings for that purpose. Without such authority there was no foundation for the proceedings which the relator seeks to have reviewed, and the assessors could have had no jurisdiction whatever to do the act complained of. Such jurisdiction cannot be presumed, but must be affirmatively shown.

By the act of April 19, 1869, under which alone the counsel for the respondents in these cases attempts to maintain the validity of the proceedings to bond these towns, the right to bond towns in aid of this railroad is confined to the towns in certain specified

counties, and in the western assembly district of Niagara county, situate along the route of the Lake Ontario Shore Railroad. Until such route is located and defined according to law it cannot, of course, be known or made to appear that any particular town is within the provisions of the act, and the location of the road in such manner that the town in question lies along the route is, as was held in the case of the town of Scipio, a condition precedent to the lawful institution of any proceedings under the act, to bond such town in aid of the road. Indeed, we can see no distinction in principle, so far as this question is concerned, between the cases presented to us and the case of the town of Scipio before referred to, and upon the authority of that case, as we understand it, we must hold that the objection, that it does not appear that either of the towns in question is situated along the route of the Lake Ontario Shore Railroad, as it had been definitely located according to law, is fatal, upon these returns, to the entire proceedings by which the bonding of the four towns in Niagara county has been attempted.

This conclusion leads to a vacation of the proceedings brought up in conformity with the judgment of the court of appeals in the case referred to, unless the objection that the certiorari comes too late is to prevail. There is no statute which prescribes the time within which a common-law certiorari must issue. The lapse of time which may have accrued between the issuing of the certiorari and the acts and proceedings sought to be reviewed is an objection addressed to the sound discretion of the court, in view of all the facts and surrounding circumstances. The time of limitation to writs of certiorari which, in the absence of special circumstances, has been usually adopted by the court, has been two years, in analogy to limitations upon writs of error. In the case of the four towns in question, none of the affidavits of the assessors were made until the month of August, in the year 1870, and they were none of them filed as directed until after that time. The principal writ of certiorari directed to the county clerk of Niagara county in each case is tested May 13, 1872, less than two years from the time when the assessors assumed to do any act by which the relators and those whom they represent could be prejudiced. And from the time when the principal writ was issued, the cases appear to have been prosecuted by the issue of ancillary writs and otherwise with all due diligence. The propriety of the ancillary writs only appeared

after and upon the return of the principal writ. The commissioners, who are alleged to have been appointed by the county judge in 1869, did not attempt to do any thing whereby the relators or those they represent could be prejudiced before the fall of 1871, when the commissioners for three of the towns assumed to enter into contracts with the railroad company to subscribe, on behalf of the towns for which they respectively assumed to act, for the stock of the railroad company.

The fact that the commissioners have issued and delivered the bonds to the railroad company affords no reason, under the circumstances, why the usual limitation of time, upon the writ of certiorari, should be shortened. Both the commissioners and the railroad company were aware, at the time of the issue of the bonds, that a certain portion of the tax payers of these towns felt themselves aggrieved by the proceedings to bond their respective towns, and claimed that the proceedings had been improperly and illegally conducted, and had procured writs of certiorari to be issued out of this court with a view to the reversal of the proceedings. And it requires no great stretch of the imagination to suppose that both the commissioners and the railroad company had notice in fact, as well as by presumption of law, of many of the defects which were alleged against the proceedings at the time when the bonds were issued and received. It does not appear that any of the bonds are in the hands of *bona fide* holders who have advanced value in good faith upon their security. And we are not called upon in any manner to consider what the rights of such holders, if any there be, may amount to, or how or against whom they can be enforced. We think, therefore, that the objection that the writs of certiorari were too late cannot prevail in these cases.

It was suggested on the argument that the court had power to award a further return, by which the apparent jurisdictional defect to which we have adverted might be cured. But it is stated by the counsel for the relators, and such statement was understood not to be controverted by the respondents, that, in point of fact, there had been no such location of the Lake Ontario Shore Railroad at the time when the proceedings under review were had, as to bring the towns in question within the operation of the act of 1869, in reference to bonding.

On the whole, and without considering the various and grave objections to the proceedings in detail, we are of opinion that for

the apparent want of jurisdiction hereinbefore referred to, the proceedings to appoint commissioners, and the proceedings of the assessors in regard to these four towns in Niagara county, namely: Newfane, Wilson, Lewiston and Somerset, must be vacated. And that judgment be entered on each of the writs of certiorari vacating the proceedings accordingly.

*Judgment accordingly.*